UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KEVIN DINGLE et al.<br>　　Plaintiffs, | :<br>: | |
| | : | No. 20-cv-1732 (VLB) |
| v. | :<br>: | |
| CITY OF STAMFORD et al.<br>　　Defendants. | :<br>:<br>:<br>:<br>:<br>: | September 30, 2021 |

## MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTION TO DISMISS COUNT TWO OF THE SECOND AMENDED COMPLAINT [Dkt. 21]

This is an action brought by members of the City of Stamford Fire Department against the City of Stamford, the City of Stamford's Director of Legal Affairs, and the City of Stamford's Director of Personnel Affairs (collectively "the City") alleging that the method the City uses to create eligibility lists for promotional positions within the fire department violates the Equal Protection Clause of the 14th Amendment to the U.S. Constitution, the Connecticut Constitution, and state laws. This action was first filed in Connecticut superior court and was removed to this Court on the basis of federal question jurisdiction. *See generally* [Dkt. 1 (Notice of Removal)].

Now before the Court is the City's motion to dismiss the second amended complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons articulated below, the Court grants the City's motion as to count two and remands the remaining counts back to state court.

1

**Background**

For the purpose of deciding the City's motion to dismiss, the Court "draw[s] all reasonable inferences in Plaintiff['s] favor, assume[s] all well-pleaded factual allegations to be true, and determine[s] whether they plausibly give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d. Cir. 2011) (citations omitted). The following facts are drawn from the allegations in the second amended complaint.

The Court takes judicial notice of the docket sheet in the superior court case and relevant provisions of the City of Stamford Charter and Civil Service Rules. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("[A] district court may rely on matters of public record in deciding a motion to dismiss . . . .").

I. **Promotional Process at Issue**

The City of Stamford Charter and Classified Service Rules prescribes the process for promoting members of the classified service, which includes members of the fire department and police department. The City of Stamford Charter Section C5-20-10 states:

> The Director of Personnel shall prescribe, amend and enforce rules for the Classified Service which shall have the force and effect of law after approval by the Personnel Commission….The [classified service] rules shall provide for open competitive or promotion examinations to test the relative fitness of applicants for such positions…for the establishment of eligible lists, re-employment lists, and service ratings, and for promotions based on competitive examinations and records of
> , character, conduct, seniority and service ratings.

The Classified Service Rules 5.5 and 6.5 prescribe the method of scoring individual examinations. Rule 5.5 authorizes rounding and banding and states:

> **Before an examination is given, the [Personnel] Director shall determine the objective measurement techniques and the procedures to be used in scoring the examination and the method of use of the scores to determine eligibility. The objective techniques may include any combination of written, unassembled, oral, physical, performance tests and assessments, or any other professionally accepted measurement technique, and the procedures for scoring may include any combination of ratings, correct or incorrect scoring, pass or fail scoring, profile matching, <u>rounding</u>, weighting, or any other professionally accepted scoring technique, and the method of use may include test score <u>banding</u>, cut scores, ranking, or any other professionally accepted method of use of examination scores. In all examinations, the Director may establish a minimum score by which eligibility may be achieved.**

**(emphasis added)**

**Rule 6.5 sets forth the procedure for banding and states:**

> **Before an examination is given, the [Personnel] Director shall determine the techniques to be used to score the examination and the method of use of the examination scores to determine eligibility. Psychometric test score banding will be used to determine eligibility for entry level and promotional examinations when it is deemed appropriate by the Director. Test score bands will only be used if there are at least five applicants for the position. If the first test score band contains fewer than three applicants, additional test score bands will be used until there are a minimum of three applicants. Test score bands shall be established based on the psychometric properties of the examination scores. All scores falling within a given band shall be considered tied. If a specific test score band (e.g., 1st band, 2nd band) is used, all applicants in that band will be certified on the appropriate eligible list to the appointing authority. When a vacancy is to be filled and banding is used, the Director shall certify the names of all the applicants in the first band on the appropriate eligible list to the appointing authority. If the first test score band contains fewer than three applicants the Director shall certify the names of all the applicants in the second band on the appropriate eligible list to the appointing authority. Additional bands will be certified until there are a minimum of three applicants. When a vacancy is to be filled and banding is not used, the Director shall certify the names of all the applicants with the three (3) highest examination scores on the appropriate eligible list to the appointing authority; as well as the names of**

all other applicants, if any, whose scores are within five (5) whole number points of the highest score.[1]

Once the examinations are scored, the Director of Legal Affairs is responsible for publishing a list of eligible candidates in accordance with the regulations set forth in the City Charter and Classified Service Rules. The department commissions then make appointments based on the eligibility list. [Dkt. 1-16(Second Amended Compl. ¶ 6)].

On April 20, 2017, the City announced it would administer promotional examinations for fire lieutenant and fire captain on July 25. The Plaintiffs sat for these examinations. *Id.* ¶ 25. The City hired Morris and McDaniel, a testing consultant firm, to administer the exams. Morris and McDaniel provided the City with results scored out to four decimals. *Id.* at ¶ 28.

On October 27, 2017, the Director of Legal Affairs, Defendant Emmett, rounded the scores provided by Morris and McDaniel to the nearest whole number and published eligibility lists for lieutenant and captain based on the rounded scores. *Id.* at ¶¶ 31-38. As a result, there were 38 candidates on the lieutenant list with 7 tied scores, and 24 candidates on the captain list with 3 tied scores. *Id.* at

---

[1] The "banding" provisions in Civil Service Rules 5.5 and 6.5 were added in 2015 after the City gave an entry-level firefighter examination that had a disparate impact on African American and Hispanic candidates. [Dkt. 1-16(Second Amended Compl. ¶¶ 20-21)]. In a Memorandum dated June 25, 2015, the City's Personnel Director, Defendant Williams, explained that banding "removes statistically inappropriate barriers to appointing candidates who are best able to succeed [and] takes into account that no test can measure a candidate's abilities with perfect confidence…increasing the use of band scoring on civil service tests considerably opens the field of candidates who can be considered for appointment." [Dkt. 29-2 (Exhibit B, Pls. Mem. In Opp'n).

¶¶ 30, 33 and 39. 11 candidates were promoted to lieutenant and 9 candidates were promoted to captain. *Id.* at ¶¶ 43-44.

During the same period of time, the City conducted promotional exams for positions within the Stamford police department. *Id.* at ¶ 47-b. Eligibility for promotions within the police department are also governed by the Charter and Classified Service Rules. Morris and McDaniel administered the examination and scored tests out to either two or four decimal points. *Id.* The published eligibility lists for positions within the police department were based on scores containing either two or four decimals. As a result, the eligibility lists for positions within the police department contained fewer candidates than eligibility lists for positions within the fire department. *Id.*

## II. Brief Procedural History

This action was first filed in Connecticut superior court on July 13, 2018. Conn. Super. Ct. Case No. UWY-CV18-6044501-S, Entry No. 100.31. The Defendants removed the case to district court on the basis of federal question jurisdiction and was subsequently remanded back to state court after the Plaintiffs withdrew their federal claim. *See generally* Dkt. 3:18-cv-01315-VLB.

The Plaintiffs applied for transfer to the Connecticut superior court's complex litigation docket where cases involving many parties and common questions of law or fact are assigned to a single judge. Conn. Super. Ct. Case No. UWY-CV18-6044501-S, Entry No. 108; *See* CT. Pr. Bk. Sec. 23-13. The case was transferred to the complex litigation docket on October 30, 2018 and remained on that docket until it was removed back to this Court. *Id.* at Entry No. 108.01.

On October 29, 2019, after conducting an evidentiary hearing, Connecticut Superior Court Judge Bellis issued a temporary injunction prohibiting the City from filling lieutenant and captain vacancies in the fire department. *Id.* at Entry No. 186. This injunction is still in effect. The superior court also ruled on two motions to dismiss and a motion to strike. *Id.* at Entry Nos. 164, 175, and 207. After the ruling on the motion to strike, the Plaintiffs filed the second amended complaint that is the subject of this motion to dismiss. A motion to dissolve the injunction is pending before this Court. [Dkt. 33].

The second amended complaint alleges two state law claims and a federal equal protection violation claim. Defendants removed the case invoking this Court's federal question and supplemental jurisdiction. [Dkt. 1 (Notice of Removal)].

## Discussion

I. <u>Legal Standard</u>

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'wellpleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005). As discussed above, the Court takes judicial notice of the docket sheet in the superior court case and relevant provisions of the City of Stamford Charter and Civil Service Rules.

## II. "Class of One" Equal Protection Claim

The Plaintiffs assert that by rounding scores of fire department candidates to whole numbers and rounding scores of police department candidates to two decimals, the candidates for promotion in the police department are treated differently than candidates for promotion in the fire department and there is no

7

rational basis for doing so. [Dkt. 1-16 (Second Amended Compl. ¶¶ 60 and 66)]. The Plaintiffs do not allege that they are members of a suspect class, they simply allege differential treatment between the fire and police departments and conclude that there is no rational basis for such treatment. *Id.*

Plaintiffs bringing equal protection claims who are not members of a suspect class can still demonstrate constitutional violations by alleging that they were "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (citing *Sioux City Bridge Co. v. Dakota County,* 260 U.S. 441 (1923); *Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.,* 488 U.S. 336 (1989)). The Supreme Court in *Olech* identified this scenario as a "class of one" claim. *Id.* "Class of one" discrimination is illustrated when "a public official, with no conceivable basis for his action other than spite or some other improper motive, comes down hard on a hapless private citizen." *Brunson v. Murray*, 843 F.3d 698, 705 (7th Cir. 2016) (citing *Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013), quoting *Lauth v. McCollum,* 424 F.3d 631, 633 (7th Cir. 2005) (alteration in original)).

The Defendants argue that Plaintiffs are bringing a "class of one" claim because they do not allege membership in a suspect class. [Dkt. 21 (Def. Mem. in Supp.) at 13]. The Plaintiffs suggest that "Defendants misconstrue Plaintiffs' Complaint" but fail to provide any further explanation as to how their claim should be construed. [Dkt. 29 (Pls. Mem. In Opp'n) at 11].

The Plaintiffs allege that public officials deprived them of promotional opportunities with the motive of increasing the list of candidates for promotion. [Dkt. 1-16(Second Amended Compl. ¶ 66)]. In defense of an equal protection claim, the Defendants would have to demonstrate a rational basis for the promotional policy challenged. *See Olech* at 564. Although Plaintiffs deny they are asserting an equal protection claim, they fail to articulate what claim they profess to bringing, and argue in opposition of the motion to dismiss that the Defendants cannot prove they had a rational basis for their promotional scheme. [Dkt. 29 (Pls. Mem. In Opp'n) at 11-14]. Based on the language of the claim and the failure to identify any other claim they could be asserting, the Court finds count two of the Plaintiffs' second amended complaint is a "class of one" equal protection claim.

### III. Public Employment Exemption to "Class of One" Claims

The Defendants cite to the Supreme Court's decision in *Engquist v. Oregon Dep't of Agr.*, which holds that "class of one" equal protection claims are not cognizable in the public employment context.  553 U.S. 591 (2008); [Dkt. 21 (Def. Mem. in Supp.) at 14] . The Plaintiffs here are firefighters employed by the City of Stamford. As public employees, they are barred by *Engquist* from bringing a "class of one" equal protection claim against their employer. The Court finds that, in light of *Engquist*, the Plaintiffs have failed to plead a viable equal protection claim and dismisses count two of the second amended complaint.

### IV. Dismissal Without Leave to Amend

The Defendants' motion to dismiss placed the nature of the Plaintiffs' equal protection claim squarely at issue, affording Plaintiffs the opportunity to state the

nature of the claim they assert. They failed to do so in their opposition to the motion to dismiss, therefore they have abandoned their claim.[2] Plaintiffs allege facts and make arguments indicating they are asserting a "class of one" claim.  Although they summarily denied they are alleging a "class of one" claim, Plaintiffs fail to identify any other claim they could be asserting. The dispute over the type of claim Plaintiffs assert has been directly raised and the parties had the opportunity to fully litigate the issue.

Having failed to take advantage of the opportunity to state what other claim they may be asserting and choosing only to deny that they are bringing a "class of one" claim,  leave to amend to file a third amended complaint is unwarranted. *See* Fed. R. Civ. P. 15(a)(1)(B), (a)(2); Fed. R. Civ. P. 1; *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) ("Undue delay and the futility of the amendment, among other factors, are reasons to deny leave [to amend].") (citation omitted). *See also McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (upholding district court's denial of leave to amend complaint after discovery closed, defendants had filed for summary judgment, and two years had passed since the filing of the original complaint); *Zahra v.*

---

[2] **The failure to oppose specific arguments in a motion to dismiss results in the abandonment of those issues and is, by itself, grounds for dismissing a claim.** *See Goodman v. Bremby*, No. 3:16-cv-00665 (MPS), 2017 U.S. Dist. LEXIS 152498, at *40 (D. Conn. Sep. 20, 2017) (finding that the plaintiffs' failure to respond to defendants' arguments in the motion to dismiss is grounds for dismissing a  claim.); *See also Arista Records, LLC v. Tkach*, 122 F. Supp.3d 32, 38–39 (S.D. N.Y. 2015) (finding that the plaintiff abandoned it's "halfhearted request for attorney's fees" by failing to press their case in their reply brief despite the fact that the defendants offered arguments against such relief); *Kao v. Brit. Airways, PLC*, No. 17 CIV. 0232 (LGS), 2018 WL 501609, at *5 (S.D.N.Y. Jan. 19, 2018) (dismissing one of the plaintiffs' claims as abandoned after plaintiffs failed to respond to defendants argument as to a lack of any allegation of a specific element of the claim); *Adams v. New York State Educ. Dept.*, 752 F. Supp. 2d 420, 452 n.32 (S.D.N.Y. 2010) (finding that any claimed right to relief under an alternate theory of liability as opposed to the asserted theory of liability is abandoned when the plaintiff fails to respond to challenges as to that challenged theory).

Case 3:20-cv-01732-VLB   Document 41   Filed 09/30/21   Page 11 of 13

*Town of Southold*, 48 F.3d 674, 686 (2d Cir. 1995) (no abuse of discretion in refusing to grant leave to amend filed two and a half years after the commencement of the action).

Finally, it does not appear that a motion for reconsideration can be filed in good faith. *See* D. Conn. L. R. 7(c)(1) (Motions for reconsideration "will generally be denied unless the movant can point to controlling decisions or data that the court overlooked in the initial decision or order."). Here the asserted claim was placed squarely at issue. Plaintiffs' failed to assert any fact or law in opposition to Defendant's argument that the were asserting a "class of one" claim. Thus, there is no fact or law which the Court could have overlooked. *See Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995) (a motion to reconsider is not an opportunity to relitigate an already decided issue). *See also supra* note 2.

V.     <u>Remand</u>

Having dismissed the only claim over which this Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining state law claims and remands this action back to state court. 28 U.S.C. § 1367(a) grants district courts supplemental jurisdiction over claims related to those over which the district court has original jurisdiction. A district court can decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). This Court has original jurisdiction over count two of the second amended complaint but after dismissing that count, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

11

This action has been heavily litigated in state court for over three years. It was first filed in July 2018, and removed to federal court before being remanded back to state court only one month after it was removed. Since then, it has been pending on the Connecticut superior court's complex litigation docket. *See Generally* Conn. Super. Ct. Case No. UWY-CV18-6044501-S.

The state court has devoted substantial time and energy to litigating this matter. It would be contrary to the principles of judicial economy and the public interest in expeditiously moving cases through the court system for this Court to exercise discretionary jurisdiction over the remaining state law claims and begin the litigation process anew.

A complicated appellate scenario would almost certainly ensue if this Court exercised jurisdiction over the state law claims. The Supreme Court of the United States is the only federal court that has jurisdiction to consider appeals of state court decisions. *See* 28 U.S.C.A. § 1257; *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 476 (1983) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923)). This principle is known as the *Rooker-Feldman* doctrine which prohibits district courts from exercising jurisdiction over state court judgments rendered before the proceeding in district court commenced. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). If this Court were to exercise jurisdiction over the remaining claims, the Court would be required to adjudicate the pending motion to dissolve the state court's preliminary injunction. In addition, if the Court exercised its discretion to maintain supplemental jurisdiction over the state law claims and an appeal ensued, the Second Circuit Court of Appeals may be called

upon to review the superior court decisions on the motions to dismiss and the motion to strike, Conn. Super. Ct. Case No. UWY-CV18-6044501-S Entry Nos. 164, 175, and 207, in contravention of the *Rooker-Feldman* doctrine. In recognition of the substantial litigation that has taken place in state court and the *Rooker-Feldman* doctrine, it would be inappropriate for this Court to exercise supplemental jurisdiction over the remaining state law claims.

## Conclusion

For the foregoing reasons, the Court GRANTS the City's Motion to Dismiss count two of the second amended complaint. The Court directs the Clerk of the Court to remand the case to state court.

It is so ORDERED.

/s/
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut, this September 30, 2021